TRUSTEES OF THE AMERICAN FED-
ERATION OF MUSICIANS AND EM-
PLOYERS' PENSION FUND, Plain-
tiffs,

v.

STEVEN SCOTT ENTERPRISES,
INC., Defendants.

No. 97 Civ. 8249(CBM).

United States District Court,
S.D. New York.

March 22, 1999.

504

Proskauer, Rose, Goetz & Mendolsohn, LLP, New York City, by Deidre Grossman, Bredhoff & Kaiser, by Julia Penny Clark, Washington, DC, for Plaintiffs.

Vedder, Price, Kaufman & Kammholz, New York City, by Neil A. Capobianco, for Defendants.

## OPINION

MOTLEY, District Judge.

Plaintiffs bring this suit seeking an audit of Steven Scott Enterprises, Inc.'s ("Ste- ven Scott") payroll records from 1992 to 1994 to assess whether Steven Scott has made full and fair contributions to the Pension Fund. In lieu of an answer, Steven Scott has brought this motion to dismiss or, in the alternative, a motion for summary judgment claiming that plaintiffs are bound by fifteen Settlement Agreements that represent a full and final settlement of all monetary claims against Steven Scott for the years that plaintiffs seek to audit. For the reasons discussed below, the court grants Steven Scott's motion and dismisses plaintiffs' complaint.

## I. FACTUAL BACKGROUND

Plaintiffs, the Trustees of the American Federation of Musicians and Employers' Pension Fund (the "Pension Fund"), bring this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"),29 U.S.C. §§ 1001 et seq., and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. There are four key players in this dispute: the Pension Fund, Local 802, Steven Scott, and William Moriarity ("Moriarity"). The Pension Fund is an employee benefit and multi-employer pension plan, as defined under ERISA, that is maintained for the purpose of providing retirement and related benefits to eligible participants and their beneficiaries. See Compl. ¶¶ 4,5. Steven Scott is a company that employs musicians to perform for its clients at various engagements, typically single engagements such as weddings or bar mitzvahs. See Def.'s 56.1 Stm't ¶ 2. Steven Scott has been a signatory to various collective bargaining agreements with Local 802, the local union for musicians in New York City. Under these collective bargaining agreements, Steven Scott is required to make certain contributions to the Pension Fund at specified rates. See id. ¶ 4. Moriarity has been the President of Local 802 and a Trustee of the Pension Fund since January 1, 1993. See Pls.' Resp. to Def.'s 56.1 Stm't ("Pls.' Resp.") ¶ 6.

Plaintiffs allege that they are entitled to enforce their right to conduct an audit of Steven Scott's records under Article 9, Section 8 of the Agreement and Declaration of Trust of the American Federation of Musicians and Employers' Pension Fund ("Trust Agreement"), the collective bargaining agreement that requires an employer to make contributions on behalf of its covered employees. *See* Compl. ¶ 10; Ex. D to Kilkelly Decl. Supp. Pls.' Resp. Def.'s Mot. Dismiss ("Kilkelly Decl.") at 54–56. Plaintiffs seek this injunctive relief pursuant to Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a). *See* Compl. ¶¶ 22, 24.

At the core of Steven Scott's motion for summary judgment are fifteen settlement agreements that defendant entered into with Moriarity, Local 802 President and Pension Fund Trustee, over the course of a three year period, from 1993 to 1996. *See* Ex A–O to Breitkopf Aff. Supp. Def.'s Mot. Dismiss ("Breitkopf Aff."). The substance of each agreement includes the following terms: (1) that Steven Scott agrees to pay a certain sum of money to the Pension Fund for certain employees, *see, e.g.,* Ex. O to Breitkopf Aff. ¶ 4; (2) that the agreement is in full settlement of all monetary claims against Steven Scott through a specified date, *see, e.g., id.* ¶ 6; (3) that the agreement binds Local 802, the Pension Fund, and Steven Scott, *see, e.g., id.* ¶ 7; and (4) that each party, including Moriarity, "acknowledges, represents, and warrants that they are authorized to enter into, execute, deliver, perform, and implement the agreement" *Id.* ¶ 9. In addition, each agreement contains a ratification clause that provides:

> [Local 802] and the [Pension Fund] agree to accept the aforesaid payment by [Steven Scott] in full satisfaction of all pension benefit contributions due the [Pension Fund] on behalf of the aforesaid individuals for the period ending [on a specified date]. Negotiation of

check for pension benefit contributions shall be deemed ratification of this Agreement.

*Id.* ¶ 5.

Each agreement is signed by two parties: Joseph Mileti, an officer and duly authorized agent for Steven Scott, and Moriarity. Moriarity's signature block appears as follows:

> ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, A.F. of M
>
> By _____
>
> William Moriarity
>
> An Officer and Duly
>
> Authorized Agent

*See, e.g., id.* at 3.

Steven Scott tendered each of the fifteen settlement checks, accompanied by a three-page settlement agreement and a list of employee names and contribution amounts, to Local 802, who then forwarded the agreements and checks to the Pension Fund. *See* Tr. at 23.[1] The checks were processed by Pension Fund clerical workers who were in charge of processing all contributions to the Pension Fund from various employers. *See* Moriarity Aff. Supp. Pls.' Resp. Def.'s Mot. Dismiss at 9. Employers making contributions to the Pension Fund on behalf of Local 802 members routinely sent their checks and employee lists (also called remittance forms) to Local 802, who then forwarded the information and money to the Pension Fund. *See id.*

The procedure for handling checks and remittance forms is as follows: (1) Pension Fund clerical workers review the checks to determine whether the signature on the check matches a signatory employer; (2) then they deposit the checks in a bank; and (3) they forward the accompanying remittance forms to an outside agency for data processing. *See id.* After data entry is completed, the forms are returned to the

---

1. All references to "Tr." refer to oral argument on this motion on November 18, 1998.

Pension Fund for filing. *See* Kilkelly Decl. ¶ 3.

Eight of the settlement checks and seven of the fifteen settlement agreements were found in plaintiffs' files. *See id.* ¶ 4. Although the settlement checks bear no special legend on the face of the check stating that the checks are in full satisfaction of any disputed or owing debt, each check was accompanied by a settlement agreement, which unequivocally stated that the check was in full settlement of all obligations owed by Steven Scott through a specified date. *See, e.g.,* Ex. O to Breitkopf Aff. ¶ 6. The Pension Fund admitted that it received a settlement agreement along with each of the fifteen checks. *See* Tr. at 23. It is also undisputed that all fifteen settlement checks were cashed by the Pension Fund. *See* Def.'s 56.1 Stm't ¶ 17; Pls.' Resp. ¶ 17.

As a Pension Fund Trustee and Local 802 President, Moriarity was authorized to collect Pension Fund contributions from employers. *See* Pls.' Resp. ¶ 11. However, Moriarity was not authorized to unilaterally enter into settlement agreements that were in full satisfaction of any owing debts to the Pension Fund. *See id.* ¶ 20. Under the terms of the Trust Agreement that governs the Pension Fund, only the Board of Trustees of the Pension Fund has the authority to enter into such agreements or delegate such authority to two or more Trustees, with equal representation from both the Union and the Employer. *See id.* ¶¶ 20, 21. However, the Pension Fund acknowledges that Steven Scott was not mailed a copy of the Trust Agreement until June 1995, *see* Kilkelly Decl. ¶ 7, and thus could not have known of the Board's exclusive authority to enter into such agreements prior to executing a majority of settlement agreements at issue. Furthermore, the Pension Fund has not alleged any facts to show that Steven Scott had any reason to know of the Board's exclusive authority in such matters.

Although each settlement agreement covers varying periods of time, it is undisputed that the agreements, if enforceable against the Pension Fund, would estop the Pension Fund from auditing Steven Scott for 1992, 1993, and 1994. *See* Def.'s 56.1 Stm't ¶ 16, 18; Pls.' Resp. ¶ 16, 18. Thus, the only question for the court to decide is whether these agreements bind the Pension Fund.

## II. DISCUSSION

### A. Standard for Summary Judgment

Since Steven Scott relies on matters outside the face of the complaint in support for its motion, the court must treat it as a motion for summary judgment rather than a motion to dismiss. Fed.R.Civ.P. 56(c) states that summary judgment shall be granted if "there is no genuine issue as to any material fact and .... the moving party is entitled to a judgment as a matter of law." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing a prima facie case demonstrating the lack of a genuine issue of material fact. Once the moving party meets this burden, the non-moving party has the burden of providing enough evidence to support a jury verdict in its favor. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In considering a summary judgment motion, all of the facts must be viewed in the most favorable manner for the non-moving party. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994). The court may only grant summary judgment when "no rational jury could find in favor of the non-moving party." *Gallo v. Prudential Residential Services, Ltd.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Equitable Estoppel and Apparent Authority

Steven Scott argues that the Pension Fund should be estopped from denying

that it is bound by the settlement agreements. Steven Scott asserts that it reasonably relied on Moriarity's repeated written representations that he was authorized to bind the Pension Fund when it entered into fifteen settlement contracts with Moriarity. Steven Scott bases its arguments on the principles of equitable estoppel and apparent authority.

■ Equitable estoppel may be properly applied in the ERISA context only when extraordinary circumstances are present. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993); *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039 (2d Cir.1985); *Haeberle v. Board of Trustees of Buffalo Carpenters Health Care Funds*, 624 F.2d 1132, 1139 (2d. Cir.1980) (holding that in the absence of extraordinary circumstances, "courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds"). In addition to the existence of extraordinary circumstances, defendant must prove all four elements of equitable estoppel, which are (1) a promise, (2) reliance on that promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced. *See Bonovich v. Knights of Columbus*, 146 F.3d 57, 62 (2d Cir.1998); *Schonholz v. Long Island Jewish Med. Center*, 87 F.3d 72, 79 (2d Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996).

■ Apparent authority shares some of the same elements that comprise equitable estoppel. "[A] principal may be estopped from denying apparent authority if (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third party." *See Minskoff v. American Express Travel Related Services Co.*, 98 F.3d 703, 708 (2d Cir.1996) (citations omitted). Here, the Pension Fund is the principal and Moriarity is its agent. Thus, in order to find that Moriari-

ty acted with apparent authority, it is necessary to show that some conduct by the Pension Fund lead Steven Scott to reasonably believe that Moriarity was authorized to enter into the fifteen settlement agreements.

■ Turning first to the estoppel argument, there was a clear and unambiguous promise made by Moriarity. Moriarity represented that he could bind the Pension Fund. This promise was clearly articulated in each of the fifteen settlement agreements at issue. *See, e.g.,* Ex. O to Breitkopf Aff. ¶¶ 7, 9 ("This Settlement Agreement shall be binding upon the Union, [the Pension Fund] and the Employer .... Each party to this Settlement Agreement hereby acknowledges, represents, and warrants that they are authorized to enter into, execute, deliver, perform and implement this Settlement Agreement ...."). There were only two parties to the settlement agreements, Steven Scott and Moriarity, a Pension Fund Trustee and Local 802 President. Therefore, the only reasonable interpretation of the "authorization clause" referenced above is to infer that Moriarity was acting in his dual capacities as Pension Fund Trustee and Union President.

Moreover, the court is not persuaded by plaintiffs' attempt to create a genuine fact issue based on Moriarity's signature block and the addition of ratification language. Plaintiffs propose that despite the clear and unambiguous contractual language, Moriarity did not represent that he could bind the Pension Fund. Plaintiffs allege that Moriarity's signature block, which only refers to his position as Local 802 President, demonstrates that Moriarity acted solely as an agent of Local 802. However, the plain meaning of the contractual language belies this conclusion. Moriarity explicitly represented that he was authorized to "enter into, execute, deliver, perform and implement" these settlement agreements. *Id.* ¶ 9. Thus, to make any sense out of the clause that binds the

Pension Fund, the court must infer that Moriarity represented that he could bind the Pension Fund.

Similarly, plaintiffs contend that the inclusion of ratification language shows that the parties intended to bind the Pension Fund only if it ratified the settlement agreements. The court finds, however, that the Pension Fund has not refuted the explicit language of the settlement agreements that supports the contrary conclusion that the Pension Fund is bound without reservation. There is no modifying language that follows the contractual provision binding the Pension Fund that would support plaintiffs' interpretation. Each agreement clearly states that "[t]his settlement agreement shall be binding upon ... the [Pension Fund] ...." *See, e.g.*, Ex. O to Breitkopf Aff. ¶ 7. The word "shall" implies that the contract binds the Pension Fund absolutely and without qualification. While it is not uncommon for contracts to include additional provisions, such as a ratification clause, to ensure that a party is bound under a myriad of circumstances, it is not a reasonable interpretation to assume that the existence of a ratification clause in these agreements leads to the credible conclusion that the contracts bind the Pension Fund *only* if the Pension Fund ratifies the contract, particularly given its lack of proximity to the relevant contractual provision. Thus, the court does not find that the additional ratification language was meant to modify the binding force of the agreements on the Pension Fund nor does it explain away Moriarity's role in professing such promises. The agreements clearly indicate that Moriarity was acting on behalf of both Local 802 and the Pension Fund. Thus, the court concludes that Moriarity did falsely represent that he could bind the Pension Fund.

■ There is also little doubt that Steven Scott relied to its detriment on Moriarity's promises. Steven Scott asserts that it would not have entered into the settlement agreements and paid additional contributions to the Pension Fund if the agreements were not considered a full and final settlement of all monetary claims against it. *See Reply Mem. Supp. Def.'s Mot. Dismiss* at 7. Furthermore, Steven Scott has acknowledged that it has not kept adequate records of its past contributions to the Pension Fund for the time period that the Pension Fund seeks to audit. *See id.* Given Steven Scott's presumptions about the binding force of the settlement agreements and its failure to keep accurate records, it is plausible to assume injustice would result if the agreements were not enforced, provided that Steven Scott was reasonable in relying on Moriarity's representations.

■ Did Steven Scott reasonably rely on Moriarity's representation that he could bind the Pension Fund? A rational fact finder could only conclude that Steven Scott was justified in its reliance given the circumstances involved in this case. Moriarity was a Pension Fund Trustee whose duties included the collection of contributions from employers.[2] He entered into fifteen agreements with Steven Scott over the course of three years. A settlement agreement accompanied each check that was sent to the Pension Fund. It is undisputed that all fifteen settlement checks were received and later cashed by the Pension Fund. Steven Scott asserts that it had no reason to believe that Moriarity (a Pension Fund Trustee) lacked the requisite authority to enter into such agreements nor that the Pension Fund was not

---

2. The court finds that Moriarity's position as a Pension Fund Trustee renders plaintiffs' argument that a local union cannot bind the Pension Fund irrelevant for the purposes of deciding defendant's motion. Although there is ample precedent for the proposition that a local union cannot waive a pension fund's rights to collect contributions, *see, e.g. Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313–316 (2d Cir.1990), the issue is not, as plaintiffs contend, whether Moriarity as Union President can bind the Pension Fund, but rather can a Trustee of the Pension Fund bind the Pension Fund.

fully aware of the terms and conditions of the settlement agreements. The Pension Fund never repudiated Moriarity's actions at any point during the three years when the fifteen settlement agreements were being executed. By its own admissions, the Pension Fund concedes that it was on constructive notice of at least seven settlement agreements negotiated by Moriarity, which were found in plaintiffs' possession. Moreover, the Pension Fund's counsel admitted during oral argument that a settlement agreement accompanied each of the fifteen checks that the Pension Fund cashed. *See* Tr. at 23.

██ However, a finding of reasonable reliance also depends on whether Steven Scott had notice of the Board's exclusive power to settle claims with employers. As a matter of law, it is unreasonable for an employer to rely on the representations of a union or pension fund agent if an employer has knowledge of the agent's proper scope of authority. *See Beef Boners and Sausage Makers Local 100 Health and Welfare Fund v. City Foods, Inc.,* No. 85 C 0450, 1986 WL 6398 (N.D.Ill. June 3, 1986) (holding employer who had constructive notice of trust agreement vesting Board of Trustees with sole authority to settle employer claims could not use an estoppel defense against trustee's claim for past payment since reliance on the misrepresentations of a union agent who also served as a pension fund trustee was unreasonable); *see also Teamster's Local 348 Health and Welfare Fund, et al. v. Kohn Beverage Co.,* 749 F.2d 315 (6th Cir.1984) (holding employer unreasonably relied on trustee's representations since it had knowledge of proper scope of individual trustee's authority under the trust agreement).

Here, Steven Scott was not mailed a copy of the Trust Agreement until June 1995. *See* Kilkelly Decl. ¶ 7. The Trust Agreement explicitly states that only the Board of Trustees at the Pension Fund has the authority to compromise claims with contributing employers. *See* Ex. D to

Kilkelly Decl. at 22. According to the Trust Agreement, the Board may elect to delegate this authority, but only to a balanced number of Union and Employer Trustees. *See id.* at 33. As such, Steven Scott's reliance on any representations made by Moriarity after June 1995 were unreasonable as a matter of law. After June 1995, Steven Scott was on constructive notice of the proper scope of Moriarity's authority. Therefore, neither estoppel nor apparent authority may be used as defenses to bind the Pension Fund to the settlement agreements entered into on September 8, 1995 and April 6, 1996, respectively. *See* Ex N and O to Breitkopf Aff. However, for reasons articulated in Section II(C) *infra,* the court finds that these latter two agreements, along with the initial thirteen, were ratified by the Pension Fund.

██ The facts of this case also establish extraordinary circumstances. Moriarity was not simply an agent of the local union; he was a Pension Fund Trustee. He was authorized to collect contributions from employers. He negotiated fifteen settlement agreements with Steven Scott. Fifteen settlement checks were cashed by the Pension Fund. During the three years in which all of these settlement agreements were being executed, the Pension Fund never informed Steven Scott that Moriarity was acting beyond the scope of his authority, despite the fact that the Pension Fund was on notice of at least seven settlement agreements negotiated by Moriarity. Although there was a Trust Agreement in effect that gave the Board of Trustees at the Pension Fund exclusive authority to enter into settlement agreements with employers, Steven Scott did not receive a copy of it until thirteen settlement agreements were executed. Taken together, these facts satisfy the extraordinary circumstances element of equitable estoppel. Thus, satisfying all four elements of equitable estoppel, the Pension Fund is estopped from denying that it is bound by the first thirteen settlement agreements.

■ As for Moriarity's exercise of apparent authority, the court concludes that the Pension Fund's acts of continually cashing all fifteen settlement checks while failing to repudiate Moriarity's unauthorized actions after receiving notice of at least seven settlement agreements created the appearance of authority that Steven Scott reasonably relied on. *See Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 553 (2d Cir.1994) ("An agent has apparent authority when conduct by the principal leads a third party to believe that the agent has authorization to act on behalf of the principal."). A principal is estopped from denying the apparent authority of its agent when it remains "silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of truth would prevent ...." *Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15, (2d Cir.1974) (citations omitted).

Thus, the Pension Fund's silence may be construed as an affirmation of Moriarity's exercise of apparent authority. *See id.* (estopping corporation from denying apparent authority of corporate president where corporation failed to repudiate president's unauthorized acts for several months); *cf. In re In–Store Advertising Sec. Litig.*, 840 F.Supp. 285, 289 (S.D.N.Y. 1993) (holding plaintiff in securities fraud case who had notice of documents indicating the probability of fraud but who failed to exercise reasonable diligence in discharging the duty to inquire was imputed with constructive knowledge of the fraud and summary judgment was entered for defendants). However, as noted *supra*, Steven Scott's reliance on Moriarity's exercise of apparent authority was no longer reasonable after June 1995, the date in which it received notice of the actual scope of Moriarity's agency as outlined in the Pension Fund's Trust Agreement.

Thus, any reasonable fact-finder would conclude that Moriarity was acting with apparent authority when he negotiated the first thirteen settlement agreements that are binding on the Pension Fund.

## C. Ratification and Accord and Satisfaction

■ Steven Scott relies on the alternative grounds of ratification and accord and satisfaction to further support its motion for summary judgment. It argues that regardless of Moriarity's ability to bind the Pension Fund to the terms of the settlement agreements, the Pension Fund has nevertheless ratified the agreements by cashing all fifteen settlement checks and by failing to inform Steven Scott that Moriarity was acting outside the scope of his authority. Moreover, Steven Scott also alleges that the agreements represent a valid accord and satisfaction between the parties.

■ "Ratification of the acts of an agent only occurs where the principal has full knowledge of all material facts and takes some action to affirm the agent's actions." *Prisco v. State of New York*, 804 F.Supp. 518, 523 (S.D.N.Y.1992). Affirmance of the intent to ratify may be inferred from "knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence ...." *Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland. Ltd.*, et al., 835 F.2d 32, 36 (2d Cir.1987) (citations omitted); *see also Chemical Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d Cir.1999) (citing Restat. (2d) of Agency § 94 and other authorities for proposition that affirmance may be inferred from failure to timely repudiate actions of unauthorized agent).

Plaintiffs attempt to deny knowledge of the terms of the settlement agreements by arguing that: (1) the agreements were never presented to the Board of Trustees, the principal, (2) the clerical workers who processed the settlement checks did not, and were not authorized to, knowingly accept the agreements by negotiating the checks in the normal course of ordinary

business, and (3) Moriarity's knowledge of the agreements cannot be imputed to the Board because he was acting outside the scope of his agency.

Despite the Pension Fund's assertions, knowledge of the settlement agreements is inferred from the undisputed fact that seven settlement agreements were found within plaintiffs' possession. In fact, the Pension Fund admitted to having received copies of all fifteen settlement agreements during oral argument:

COURT: Were [the settlement checks] accompanied by an agreement when they came in?

MS. CLARK: They are accompanied by an agreement and if you look at all the pages—I think the easiest place when you look at this is the declaration of Lourdes [Saltares], which is in our materials, and she attached a complete package, including a check. . . .

COURT: The whole package? What do you mean by "the whole package"?

MS. CLARK: It has about ten to fifteen pages of a listing of employee names and amounts of money. It then has the settlement agreement and at the back it has a check.

COURT: As to each check there is such a document?

MS. CLARK: Each check came in such a package. . . .

*See* Tr. at 23.

As previously stated, the principal in this case is the Pension Fund itself, and not the Board of Trustees. Therefore, the Pension Fund was on constructive notice of all settlement agreements within its possession. *See In re In–Store Adver. Sec. Litig.,* 840 F.Supp. at 289 (holding possession of documents established constructive knowledge). Once the Pension Fund had knowledge of the settlement agreements, its failure to repudiate Moriarity's actions constituted ratification of the agreements. *See Monarch,* 835 F.2d at 36; *see also Chemical Bank,* at 128.

Furthermore, the Pension Fund cannot deny knowledge of the agreements simply because its clerical workers failed to read the settlement agreements prior to cashing the checks. A three-page settlement agreement accompanied each of the fifteen settlement checks. The ratification clause was explicit. The Pension Fund cannot now complain that it failed to read or inquire into the meaning of this clause simply because its clerical workers did not notice the settlement agreements or chose not to read the agreements. *See Doctor's Assoc. Inc. v. Stuart,* 85 F.3d 975, 980 (2d Cir.1996) (finding party's failure to read contract provisions was unreasonable); *see also In re Drexel Burnham Lambert Group, Inc.,* 157 B.R. 539 (Bankr.S.D.N.Y. 1993) (holding former investor had affirmative duty to read confirmation slips and report any disputes or inaccuracies in action against bankrupt securities broker who allegedly engaged in unauthorized trading on investor's account). Perhaps the clerical workers should have routed the settlement agreements and checks to a supervisor or someone in a position to properly handle them. Regardless, the Pension Fund acted unreasonably when it failed in its duty to inquire into the authorization for the settlement agreements after receiving knowledge of said agreements. Thus, a reasonable fact finder could only conclude that the Pension Fund had full knowledge of all material terms of the settlement agreements and ratified the agreements by cashing the checks according to provisions of the ratification clause that was readily apparent in each settlement agreement.

 Lastly, Steven Scott argues that it entered into a valid accord and satisfaction with the Pension Fund. An accord and satisfaction is reached when "a good faith dispute existed over the existence of a debt or an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim." *Lamb v. Emhart Corp.,* 47 F.3d 551, 561 (2d Cir.1995). The contract of accord

must be tendered in full satisfaction of the debt and payment must be knowingly accepted. *See id.* at 561–62. However, the court declines to address defendant's arguments regarding accord and satisfaction since the court has found the Pension Fund is bound by all fifteen agreements under alternative principles of estoppel, apparent authority, and ratification.

## III. CONCLUSION

Steven Scott's motion for summary judgment is granted because a reasonable fact-finder could only conclude that: (1) the Pension Fund is equitably estopped from denying that it is bound by the first thirteen settlement agreements; (2) that Moriarity acted with apparent authority when he negotiated those thirteen agreements; and (3) the Pension Fund ratified all fifteen settlement agreements by continually cashing the checks accompanying the settlement agreements and by failing to inform Steven Scott that Moriarity was not acting within the scope of his authority. Therefore, summary judgment is granted to defendant and plaintiffs' complaint is dismissed.